# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELROY W. BROWNING,<br><br>           Plaintiff,<br><br>    v.<br><br>JEANNE WOODFORD, et al.,<br><br>           Defendants.<br>_____ / | CASE NO. 1:05-cv-00342-AWI-NEW (DLB) PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED, AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, AND THIS MATTER BE SET FOR JURY TRIAL<br><br>(Docs. 76 and 78) |

I.    <u>Findings and Recommendations Addressing Cross-Motions for Summary Judgment</u>

    A.    <u>Procedural History</u>

Plaintiff Elroy W. Browning ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed March 11, 2005, against defendants Castro, Jackson, and Lopez ("defendants") for use of excessive force, in violation of the Eighth Amendment.[1] (Doc. 21.) On November 17, 2006, defendants filed a motion for summary judgment, and on November 21, 2006, plaintiff filed what he entitled a "Pre-Trial Dispositive Motion," construed to be a motion for summary judgment. (Docs. 76-78.) Defendants filed an opposition to plaintiff's motion on

---

[1] On November 10, 2005, plaintiff's conspiracy claim, due process claims, equal protection claim, claims based on violation of the California Penal Code, and supervisory liability claims were dismissed from this action, without prejudice, for failure to state any claims upon which relief may be granted; and defendants Woodford, Scribner, Sheppard-Brooks, and Grandy were dismissed from this action based on plaintiff's failure to state any claims upon which relief may be granted against them. (Doc. 21.)

1

December 5, 2006, and plaintiff filed an opposition to defendants' motion on December 7, 2006.[2] (Docs. 81-83.)

      B.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. <u>British Airways Board v. Boeing Co.</u>, 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." <u>Calderone v. United States</u>, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, <u>Summary Judgment Under the Federal Rules: Defining Issues of Material Fact</u> 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." <u>Id</u>. Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. <u>Id</u>. This requires plaintiff to establish beyond controversy every essential element of his retaliation claims. <u>Fontenot v. Upjohn Co</u>., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

As to defendants' motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on October 19, 2005. <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988). (Doc. 19.)

Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

///

1	In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    C.    Summary of Defendants' Motion for Summary Judgment

        1.    Undisputed Facts[3]

1. Plaintiff Elroy W. Browning is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR), who, at all times relevant to this action, was housed at the California State Prison – Corcoran (CSP-Cor), Corcoran, California.
2. On April 9, 2004, plaintiff was housed in cell 3C02-208 at CSP-Cor.
3. Defendant Castro was supervising the controlled morning feeding on April 9, 2004, in building 3CO2 at CSP-Cor; defendants Jackson and Lopez were floor officers in building

///

---

[3] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). In this instance, plaintiff did not comply with the Local Rule. However, plaintiff's complaint and cross-motion for summary judgment may be treated as opposing affidavits, to the extent that they are verified and set forth admissible facts (1) within plaintiff's personal knowledge and not based merely on plaintiff's belief, and (2) to which plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

1         3CO2 at CSP-Cor on April 9, 2004; and Officer Parra was the control booth officer in
2         building 3CO2 at CSP-Cor on April 9, 2004.
3 4.   The institution was operating under lockdown conditions after a state of emergency had been
4         declared on April 1, 2004.
5 5.   Following application of pepper spray, defendant Lopez placed plaintiff's cellmate, inmate
6         Stephens, in restraints and together with defendant Jackson escorted him to the Upper "A"
7         section shower for decontamination.
8 6.   Defendant Lopez and defendant Jackson then returned to the cell, placed plaintiff in
9         restraints and escorted him to the Lower "A" section shower for decontamination.
10 7.  The purpose of pepper spray is to temporarily impair an inmate's vision and make it difficult
11         for him to breathe, causing him to become disoriented and unable to continue his resistance.
12       2.     Discussion

13      In his complaint, plaintiff alleges that on April 1, 2004, a state of emergency was declared
14 and the institution was placed on lockdown as a result of a racial riot. (Doc. 1, Comp., ¶11.)
15 Plaintiff alleges that on April 9, 2004, defendant Castro and others arrived at his cell, which was
16 occupied by plaintiff and inmate Stephens, to serve the morning meal. (Id., ¶12.) Plaintiff alleges
17 that inmate Stephens was given one tray, which he handed to plaintiff to hold while he waited for
18 the second tray. (Id.) Plaintiff, who was sitting on his bunk at the time, alleges that the officers did
19 not hand out a second tray, slammed the cell door, and moved to the next cell. (Id.)

20      Plaintiff alleges that inmate Stephens asked to speak with the sergeant and defendant Castro
21 arrived with defendant Jackson. (Id., ¶¶13, 14.) Plaintiff alleges that instead of delivering the food
22 tray, defendant Castro ordered defendant Jackson to spray inmate Stephens and plaintiff with pepper
23 spray. (Id., ¶14.) Plaintiff alleges that defendant Castro ordered them to lie on the cell floor, ordered
24 other officers to remove the chain from the cell door, and ordered defendant Jackson to spray inmate
25 Stephens and plaintiff with "'toxin' chemicals" and then slam the door, which cut off air circulation.
26 (Id., ¶16.) Plaintiff alleges that defendant Castro ordered that the cell door be opened shortly
27 thereafter, and ordered defendants Jackson and Lopez, and others to place plaintiff and inmate
28 Stephens in cuffs. (Id., ¶17.) Plaintiff alleges that they were then placed in showers, where

1    defendants Castro, Jackson, Lopez and other officers turned on the hot water, causing laughter and
2    cheers. (Id., ¶18.) Plaintiff alleges that the decontamination procedure calls for the application of
3    cold water. (Id., ¶19.) Plaintiff alleges he was left in the shower for two hours without medical
4    attention or treatment.[4] (Id.) Finally, plaintiff alleges that a false report was written to cover up the
5    misconduct, but he was found not guilty of the charge against him. (Id., ¶20.)

6           Defendants' position in their motion for summary judgment is that on April 9, 2004, at
7    approximately 10:15 a.m., loud banging and yelling was heard coming from cell 208 occupied by
8    plaintiff and inmate Stephens. (Doc. 77, Castro Dec., ¶¶3, 4; Jackson Dec., ¶¶3, 4.) Defendants
9    contend that defendant Castro and Officer Parra observed plaintiff and inmate Stephens kicking on
10   the door of their cell, and that they continued kicking their cell door despite having been ordered by
11   defendant Castro to stop kicking the door. (Id., Castro Dec., ¶¶5, 6; Parra Dec., ¶¶3-5.) Defendants
12   contend that the kicking was of such force that the retention chain on the door was shaking violently
13   and the door was moving and appeared to be coming off of the structural track, causing defendant
14   Castro to fear that the continued kicking would compromise the integrity of the door. (Id., Castro
15   Dec., ¶¶8, 9.)

16          Defendants contend that defendant Castro called defendant Jackson over to the cell door and
17   ordered the cell door to be cracked open about twelve inches, at which time defendant Jackson
18   observed both inmates on the floor with their backs to him with white cloths wrapped around their
19   nose and mouth areas, not in prone positions or in their bunks. (Id., Castro Dec., ¶9; Jackson Dec.,
20   ¶8.) Defendants contend that defendant Jackson then administered a burst of O.C. pepper spray into
21   the cell, hitting both inmates in the upper torso area. (Id., Castro Dec., ¶10; Jackson Dec., ¶9.)
22   Defendants contend that the cell door was closed and defendant Castro gave numerous orders to both
23   inmates to get into a prone position and to stop kicking the door, but neither inmate complied. (Id.,
24   Castro Dec., ¶11; Jackson Dec., ¶10.) Defendants contend that defendant Castro ordered the door
25   be reopened twelve inches, and again directed defendant Jackson to use his pepper spray. (Id.,
26   Castro Dec., ¶¶13. 14; Jackson Dec., ¶11.) Defendants contend that on the second try, both inmates

---

[4] The sole claim in this action is one for use of excessive physical force.

were still on the floor but not in a prone position and facing to the right, which allowed defendant Jackson to spray both inmates in the upper torso and facial area with one additional four-second burst of O.C. pepper spray. (Id., Castro Dec., ¶13; Jackson Dec., ¶12.) Defendants contend that the door was closed and defendant Castro again ordered the inmates to get into a prone position. (Id., Jackson Dec., ¶13.) Defendants contend that both inmates then stopped kicking the door, got into a prone position, and complied with staff to be handcuffed and removed. (Id., Castro Dec., ¶15; Jackson Dec., ¶14.)

Defendant contend that defendant Lopez placed inmate Stephens in restraints and together with defendant Jackson escorted him to the Upper "A" section shower for decontamination, and then defendants Lopez and Jackson returned to the cell, placed plaintiff in restraints and escorted him to the Lower "A" section shower for decontamination. (Def. U.F. 5, 6.) Defendants contend that the showers were turned on and each inmate was decontaminated by copious amounts of cold water for several minutes, and following decontamination, both inmates were medically cleared and rehoused in their assigned cell without further incident. (Castro Dec., ¶¶17, 18; Jackson Dec., ¶17; Lopez Dec., ¶6; Parra Dec., ¶¶16, 17.)

Defendants argue that while the disruption was not an immediate threat to human life, there was a serious threat to prison security because once plaintiff and his cell mate began kicking the cell door with such force that the door appeared to be coming off of its structural track, and refused to follow defendant Castro's orders, staff could not safely conduct housing unit operations. (Castro Dec., ¶19.) Defendants argue that the use of pepper spray by defendant Jackson was a tempered use of force in response to the dangerous situation presented by both inmates' aggressive refusal to comply with defendant Castro's direct orders to stop kicking the door. (Castro Dec., ¶¶19, 20; Jackson Dec., ¶¶18, 19.) The purpose of pepper spray is to temporarily impair an inmate's vision and make it difficult for him to breathe, causing him to become disoriented and unable to continue his resistance, Def. U.F. 7, and defendants argue that plaintiff suffered the irritation associated with exposure to O. C. pepper spray, but was not observed to have suffered any physical injuries or respiratory distress. (Castro Dec. ¶22, Jackson Dec., ¶21.)

///

1    Defendants contend that defendant Lopez was not involved in the response to the cell
2    disruption until after the last use of pepper spray, and that defendant Lopez did not become involved
3    until he and defendant Jackson removed inmate Stephens and then plaintiff from the cell, and
4    escorted them to the shower for decontamination. (Lopez Dec., ¶¶2-5.)

5    Plaintiff's opposition to defendants' motion for summary judgment is not verified and is not
6    accompanied by any evidence. However, the allegations in plaintiff's complaint, as summarized
7    above, exhibits, and plaintiff's cross-motion for summary judgment shall be used in determining
8    whether plaintiff has submitted sufficient evidence to raise any triable issues of fact, as discussed
9    in subsection E. Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132,
10   1134 (9th Cir. 2001).

11   　　D.　　Summary of Plaintiff's Motion for Summary Judgment
12   　　　　1.　　Undisputed Facts
13   1.  On April 1, 2004, a riot took place between Southern Hispanics and white inmates and a state
14       of emergency lock-down was declared.
15   2.  All inmates housed on Facility 3C, including plaintiff, were subject to cell feeding.
16   3.  A. Parra was opening doors for controlled feeding during breakfast.
17   4.  Defendants were employed by CDCR.
18   5.  During lockdown feedings, prisoners are subject to use of paper trays.
19   6.  Defendant Castro was a Correctional Sergeant and was assigned to CSP-Cor.
20   7.  Defendants Jackson and Lopez were Correctional Officers and were assigned to CSP-Cor.
21   8.  Plaintiff received a Director's Level decision, which exhausted the administrative remedy
22       process.
23   9.  Defendant Jackson was assigned as the MK-46 Officer at CSP-Cor in Building 3C02.
24   10. Defendant Castro was supervising the controlled morning feeding in 3C02 at CSP-Cor on
25       April 9, 2005.
26   　　　　2.　　Discussion
27   　　In his motion, plaintiff contends that he was on his bunk when defendant Castro came over
28   to the cell and inmate Stephens began telling him that only one breakfast tray had been issued. (Doc.

1  78, Motion, pg. 17:12-14 & 19:1-5.) Plaintiff contends that defendant Castro ordered defendant
2  Jackson to spray plaintiff and inmate Stephens with pepper spray. (Id., 19:6-9.) Plaintiff contends
3  that defendant Lopez watched the incident of excessive force play out and failed to intervene, and
4  that defendant Lopez was holding onto the cell door with defendant Castro while defendant Jackson
5  sprayed plaintiff on defendant Castro's orders. (Id., 3:4-7, 4:20-22, 9:7-9.) Plaintiff contends that
6  defendant Jackson continued to spray plaintiff and inmate Stephens when they were in prone
7  positions. (Id., 5:3-4.) Plaintiff contends that after he was taken to the shower by defendants, hot
8  water was applied, causing him to suffer physical and mental pain from the burning effects. (Id.,
9  5:17-22.) Plaintiff contends that he was then placed back in his cell still contaminated with pepper
10 spray. (Id., 6:22-23.)

11     Defendants oppose plaintiff's motion on the ground that they have presented evidence that
12 defendant Jackson observed both inmates on the floor with their backs to him with white cloths
13 wrapped around their nose and mouth areas not in prone positions or in their bunks, which brings
14 into dispute plaintiff's statement that he was on his bunk. (Doc. 81, Opp., 2:24-3:1.) Defendants
15 argue that there was need to use some force because plaintiff was disruptive and not complying with
16 orders, and became compliant only after the second burst of pepper spray. (Id., 3:7-13.) Defendants
17 argue that plaintiff was thereafter  was decontaminated with cold water, medically cleared, and
18 rehoused without incident. (Id., 14-15.)

19     E.     Resolution of Parties' Cross Motions

20     "What is necessary to show sufficient harm for purposes of the Cruel and Unusual
21 Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.
22 McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . .
23 . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks
24 and citations omitted). The malicious and sadistic use of force to cause harm always violates
25 contemporary standards of decency, regardless of whether or not significant injury is evident. Id.
26 at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force
27 standard examines de minimis uses of force, not de minimis injuries)). However, not "every
28 malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth

Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court has considered both motions, the evidence submitted in support of the motions, and the allegations set forth in plaintiff's complaint, which is accompanied by exhibits. "[S]ummary judgment or judgment as a matter of law in excessive force cases should be granted sparingly," Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)), and in this instance, the parties agree on very little. It is undisputed that the institution was on lockdown on April 9, 2004, due to a riot, and inmates were being fed in their cells. Plaintiff and inmate Stephens were sharing a cell and the event giving rise to this suit occurred during delivery of the morning meal to inmates. The parties' versions part ways thereafter.

Defendants take the position that plaintiff and his cellmate were mule kicking their cell door to the point that the integrity of the door was being compromised, and they were subdued with pepper spray only after refusing to cease kicking the door and assume prone positions. Defendants argue that the use of force was tempered in response to the threat created by plaintiff and inmate Stephens' refusal to comply with orders to cease kicking the door and assume prone positions.

However, plaintiff's position is that he was on his bunk when defendant Castro ordered defendant Jackson to spray plaintiff and inmate Stephens. Plaintiff contends that he did nothing

10

wrong and there was no need for any force to be used against him, and that plaintiff and his cellmate were sprayed a second time after they had assumed prone positions. Plaintiff has submitted evidence that he was charged with a rules violation as a result of the incident, but found not guilty, and that defendant Castro's report that both inmates were kicking the door was found not to be credible. (Doc. 1, Comp., pgs. 23 & 25 of court record.)

Defendants' argument that no reasonable jury could return a verdict for plaintiff given plaintiff's failure to explain how he could have been sprayed in the upper torso and face if he remained on his bunk, and his failure to explain why he failed to comply with the order is not persuasive. (Doc. 81, Opp., 3:1-4.) Defendants have presented no evidence from which the court could conclude that the size of the cell was so large or that pepper spray is so precise when discharged that it could not have hit plaintiff if he was on his bunk. Further, plaintiff does not argue he remained on his bunk from the beginning to the end of the incident. Plaintiff contends he was on his bunk while his cellmate was arguing with defendant Castro over the breakfast tray and defendant Castro ordered the use of the pepper spray. Also, plaintiff's contends that defendant Castro ordered the use of the pepper spray on both inmates, not just Stephens. Finally, plaintiff does not agree with defendants that he failed to obey defendant Castro's order. Plaintiff's position is that he and inmate Stephens were sprayed a second time while in a prone position, which contradicts defendants' position that the inmates assumed prone positions as ordered only *after* being sprayed twice.

Given the material factual disputes in this matter, neither plaintiff nor defendants Castro and Jackson are entitled to summary judgment. While defendants have presented evidence that the force used was in good faith in order to restore order given that plaintiff and his cellmate were disruptive and disobedient, and that plaintiff and his cellmate failed to comply with defendant Castro's orders to cease kicking the door and assume prone positions until after the application of two bursts of pepper spray, plaintiff has submitted evidence that because he was not being disruptive or non-compliant and was on his bunk when defendant Castro ordered the first application of pepper spray, there existed no situation which required the use of any force to restore order or maintain discipline. As a result, plaintiff argues that the force used excessive, in violation of his rights. The existence of factual disputes regarding what plaintiff was or was not doing when the pepper spray was applied

and whether or not there existed a situation which required the use of force precludes the award of summary judgment to either plaintiff or defendants. The trier of fact must sort through the parties' versions of the event and determine whether the force used was excessive or not under the circumstances.

With respect to defendant Lopez, liability may be imposed on a bystander defendant for failing to intervene where he had the opportunity to intervene but did not do so. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). Here, although plaintiff does not contend that defendant Lopez gave any orders or applied the pepper spray, he does contend that defendant Lopez was present at the cell location during the entire incident. Defendants dispute this and contend that defendant Lopez arrived only after the pepper spray had been applied in order to escort plaintiff to the shower. Given the dispute over whether defendant Lopez was present during the use of force or not, and given the absence of any evidence that even if he was present, he did not have the opportunity to intervene, there exist disputed issues of material fact precluding the award of summary adjudication to defendant Lopez.

        1.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because defendants Castro and Jackson applied the force used in a good faith effort to maintain and restore discipline, and defendant Lopez was not personally involved in the used of force. (Doc. 76, 21-10:9.) Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Plaintiff has presented evidence that he was not disruptive or disobedient, and that he was on his bunk and his cellmate was trying to obtain a second breakfast tray from defendant Castro when defendant ordered defendant Jackson to apply pepper spray to plaintiff and his cellmate. Plaintiff has also presented evidence that the second burst of pepper spray was applied after plaintiff and his cellmate had assumed prone positions, and that defendant Lopez was present along with defendants Jackson and Castro during the entire incident. Finally, plaintiff has presented evidence that he was decontaminated with hot water rather than cold water, and that he was placed back in his cell still contaminated with pepper spray. These facts are sufficient to show that defendants violated plaintiff's rights under the Eighth Amendment.

At the time of the incident on April 9, 2004, the law was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," Saucier, 533 U.S. at 202 (citation omitted), and defendants make no argument to the contrary. With respect to excessive force claims, the "inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, whether or not significant injury is evidence. Id. at 9. Further, it was established by 2004 that the failure to intervene by a defendant can violate an inmate's constitutional rights. Robins, 60 F.3d at 1442. No reasonable officer would have believed that spraying a non-disruptive, compliant inmate who was on his bunk with pepper spray, and then spraying him a second time after he had assumed a prone position was force "applied in a good-faith effort to maintain or restore discipline . . . ." Id. at 7. Due to the existence of material factual disputes concerning what occurred during the incident where pepper spray was used, defendants are not entitled to qualified immunity.

///

///

F.  Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed November 17, 2006, be DENIED;
2. Plaintiff's motion for summary judgment, filed November 21, 2006, be DENIED; and
3. This matter be set for jury trial.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 19, 2007**               **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE