1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| **ELROY W. BROWNING,** | ) | **1:05-CV-0342 AWI NEW (DLB) P** |
| **Plaintiff**, | ) | **PRETRIAL ORDER** |
| **v.** | ) | **Motions In Limine Hearing:** |
| **JEANNE WOODFORD et al.,** | ) | **November 6, 2007** |
| **Defendants.** | ) | **8:30 a.m., Courtroom 2** |
| | ) | **Trial:  November 6, 2007** |
| | ) | **9:00 a.m., Courtroom 2** |

11
12
13
14
15
16

17    Plaintiff Elroy W. Browning ("Plaintiff") is a state prisoner proceeding pro se and in

18    forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.   This action is proceeding

19    on Plaintiff's complaint, filed March 11, 2005, against Defendants for subjecting Plaintiff to

20    conditions of confinement that violated the Eighth Amendment.   Specifically, this action is

21    proceeding against Defendants Lopez, Castro, and Jackson on Plaintiff's claim that they

22    exercised excessive force when Plaintiff was sprayed with OC pepper spray in his cell on April 9,

23    2004.

24    The parties have submitted pretrial statements.   On September 24, 2007, the court held a

25    Telephonic Trial Confirmation Hearing.   After considering the parties' pretrial statements, the

26    file, and the statements made during the Telephonic Trial Confirmation Hearing, the court issues

27    this Pretrial Order.

28

**I.  Jurisdiction and Venue**

The court has federal question subject matter jurisdiction over this federal civil rights action pursuant to 28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

**II.  Jury Trial**

All parties request a trial by jury.  This action shall be tried by a jury of eight.

**III.  Facts**

    **A.  Undisputed Facts**

1.     Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).   At all times relevant to this action, Plaintiff was housed at the California State Prison – Corcoran, California ("CSP-Corcoran").

2.     On April 1, 2004, a state of emergency was declared, and CSP-Corcoran began operating under lock-down conditions.

3.     On April 9, 2004, Plaintiff was housed in cell 3C02-208 CSP-Corcoran ("cell 208").

4.     On April 9, 2004, Sergeant Castro was supervising the controlled morning feeding in building 3CO2.  Officers Jackson and Lopez were floor officers in building 3CO2. Officer Para was the control booth officer in building 3CO2.

5.     At approximately 10:15 a.m. Defendant Castro went to cell 208.  Defendant Castro stated that Plaintiff and Inmate Stephens should not kick on the cell door.   Defendant Castro then called Defendant Jackson over to the cell.

6.     Defendant Castro ordered Defendant Jackson to open the cell about twelve

2

inches.    Defendant Jackson then administered O.C. pepper spray into the cell, hitting both Plaintiff and Inmate Stephens.   The cell door was then closed.

7.    Defendant Castro again ordered the cell door opened and directed Defendant Jackson to use the pepper spray again.

8.    After the second pepper spray, both Plaintiff and Inmate Stephens were in a prone position on the floor.

9.    Defendant Castro ordered the cell door opened and ordered Defendant Jackson and Defendant Lopez, along with other officers, to place Plaintiff and Inmate Stephens in handcuffs.    Plaintiff and Inmate Stephens complied with staff when being handcuffed and removed from the cell.

10.    Defendant Lopez placed Inmate Stephens in restraints and together with Defendant Jackson escorted him to the Upper "A" section shower.

11.    Defendant Lopez and Defendant Jackson then returned to the cell, placed Plaintiff in restraints and escorted him to the Lower "A" section shower.

12.    The showers were turned on.


**Plaintiff's Additional Proposed Undisputed Facts**

a.    The reason for the state of emergency was that on April 1, 2004, a riot took place inside the dining hall within the Level IV 3C Facility between Southern Hispanic inmates and White inmates.    Prior to this event, on March 13, 2004, a Black inmate had attempted to murder two correctional officers within the 3B visiting room.

b.    The April  9, 2004 incident began during morning feeding.    When officers arrived at Plaintiff's cell, Defendant Jackson directed Plaintiff to lay on his upper bunk on his stomach facing the cell window.   Defendant

3

Jackson directed Plaintiff's cell mate, Inmate Stephens, to sit at the desk stool facing the cell door with both hands in plain view.   While Defendant Jackson monitored the inmates movements, the other custody staff arrived and issued only one breakfast tray.   They then closed the door.

c.   After receiving only one breakfast tray, Inmate Stephens attempted to gain the attention of prison officials.   Staff disregarded Inmate Stephens' call for another tray.   At this time, Defendant Castro was standing in the middle of the day room.

d.   Plaintiff was found not guilty of the disciplinary charges that stemmed from this incident.

**Defendant's Additional Proposed Undisputed Facts**

a.   At approximately 10:15 a.m., on April 9, 2004, loud banging and yelling was heard coming from cell 208.

b.   Defendant Castro and Defendant Parra observed Plaintiff and Inmate Stephens kicking on the door of their cell door.

c.   The purpose of pepper spray is to temporarily impair an inmate's vision and make it difficult for him to breathe, causing him to become disoriented and unable to continue his resistance.

d.   Plaintiff suffered the irritation associated with exposure to O. C. pepper spray, but was not observed to have suffered any physical injuries or respiratory distress.

e.   Defendant Lopez was not involved in this incident until after the last use of pepper spray.   Defendant Lopez did not become involved until he and Defendant Jackson removed Plaintiff from his cell, and

4

escorted him to his decontamination shower.

**B.  Disputed Facts**

1.      Whether when Defendant Castro arrived at the cell Inmate Stephens explained that the only issue was that they needed another breakfast tray.

2.      Whether after Defendant Castro arrived, Plaintiff and Inmate Stephens continued to kick on their cell and did not stop even when Defendant Castro ordered them to stop.

3.      Whether Plaintiff and Inmate Stephens were kicking their door with such force that the retention chain on the door was shaking violently, the door was moving and appeared to be coming off of the structural track, causing Defendant Castro to fear that the continued kicking would compromise the integrity of the door.

4.      Whether Plaintiff and Inmate Stephens were on the floor with their backs to the door, with white cloths around their noses and mouths when Defendant Castro and Defendant Jackson arrived.

5.      Whether Defendant Jackson administered a burst of O.C. pepper spry, hitting both inmates in the upper torso area, or whether Defendant Jackson saturated the inmates in their facial area.

6.      Whether Plaintiff and Inmate Stephens kicked the door and disregarded orders to get into the prone position after the first administration of O.C. pepper spray.

7.      Whether Plaintiff and Inmate Stephens were in the prone position on the floor, in compliance with orders, or whether they were still not in a prone position when Officer Jackson sprayed the O.C. pepper spray the second time.

8.      Whether Plaintiff and Inmate Stephens were saturated with O.C. pepper spray or whether Defendant Jackson sprayed both inmates in the upper torso and facial

area with a four-second burst of pepper spray.

9. Whether Plaintiff was properly decontaminated.   Whether during the decontamination process the showers were turned on with hot water when decontamination procedure calls for cold water.   Whether Plaintiff was rehoused in the cell while it still contained pepper spray.

10. Whether there was a need for the use of some force against Plaintiff because he had become disruptive during lock-down conditions under a state of emergency.

11. Whether the amount of force used was reasonably related to the need for force.

12. Whether the absence of any serious injury resulting from the incident indicates that the force was applied in a good-faith effort to maintain or restore discipline, and was not applied maliciously and sadistically to cause harm.

13. Whether Defendants wrote a false report to cover up any misconduct.

14. The nature and extent of Plaintiff's injury, and the amount of Plaintiff's compensatory damages, if any.

15. Whether Plaintiff is entitled to punitive damages, and the amount of any punitive damages.


**C.  Disputed Evidentiary Issues**

1. Should Plaintiff or any other incarcerated witnesses testify, Defendants will seek to impeach such witnesses by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating a propensity to lie.

2. Defendants will object to the testimony of any witnesses not listed in Plaintiff's pretrial statement.

3. Defendants believe the listed incarcerated witnesses are cumulative and irrelevant to the issues of this matter.

4.      Defendants will raise the issue of Plaintiff's lack of a medical expert. Defendants claim expert medical testimony is necessary to establish the nature and extent of Plaintiff's injury.  Plaintiff has not identified any expert medical witnesses, and there is  nothing in the record indicating that he is qualified as an expert medical witness.  In the absence of proof from a medical expert, Defendants contend that Plaintiff lacks competent medical expertise to offer opinions or inferences as to the nature and extent of Plaintiff's injury.

Defendants concede that Plaintiff can testify as to what he experienced as a result of his accident.  In addition, Defendants will offer as trial exhibits Plaintiff's medical records for the relevant periods.  However, Defendants contend that Plaintiff should be precluded from offering any opinions or inferences to be drawn from these records.

5.      Defendants point out that Plaintiff has listed discovery materials and declarations of the Defendants as exhibits.  Defendants request that these discovery material be used only to the extent permitted by the rules of evidence.

**IV.  Relief Sought**

The complaint requests $500,000.00 in compensatory damages and $1,600,000.00 in punitive damages.

Defendants seek judgment in their favor and their costs of this action.

**V.  Points of Law**

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from cruel and unusual punishment.   "[W]henever prison officials stand accused of using

7

1  excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

2  judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore

3  discipline, or maliciously and sadistically to cause harm."   Hudson v. McMillian, 503 U.S. 1, 7

4  (1992). "In determining whether the use of force was wanton and unnecessary, it may also be

5  proper to evaluate the need for application of force, the relationship between that need and the

6  amount of force used, the threat reasonably perceived by the responsible officials, and any efforts

7  made to temper the severity of a forceful response." Id. (internal quotation marks and citations

8  omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but

9  does not end it." Id.

10      "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

11  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson,

12  503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual and

13  responsive to contemporary standards of decency." Id. (internal quotation marks and citations

14  omitted). The malicious and sadistic use of force to cause harm always violates contemporary

15  standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also

16  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard

17  examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent

18  touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The

19  Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from

20  constitutional recognition de minimis uses of physical force, provided that the use of force is not

21  of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and

22  citations omitted).

23      Punitive damages are appropriate in a section 1983 action "'when the defendant's conduct

24  is shown to be motivated by evil motive or intent, or when it involves reckless or callous

25  indifference to the federally protected rights of others.'" Kennedy v. Los Angeles Police Dept.,

26  901 F.2d 702, 707 (9th Cir.1989) (quoting Smith v. Wade, 461 U.S. 30, 56 (1971)).

27

28                                    8

1   **VI.  Abandoned Issues**

2          None.

3

4   **VII.  Witnesses**

5          The following is a list of witnesses that the parties expect to call at trial, including

6   rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS

7   SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON

8   A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST

9   INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

10

11          **A.  Plaintiff's Witnesses**

12          1.      C.O.  F. Mariscal

13          2.      Lieutenant L.L. Wood

14          3.      Dr. Enenmoh

15          4.      Inmate Stephens, D-61914

16          5.      Inmate Nall, P-25352

17          6.      Inmate Hook, T-08976

18          7.      Inmate Taylor, J-75560

19          8.      Inmate Tower, P-10003

20          9.      Inmate Blackwell, E-72399

21          10.     Inmate Richards, C-27962

22          11.     Plaintiff Elroy Browning

23

24          As to Plaintiff's proposed incarcerated witness, and order accompanying this order

25   addresses Plaintiff's motion for incarcerated witnesses.

26          As to Plaintiff's proposed un-incarcerated witnesses, the court has received Plaintiff's

27

28                                          9

subpoenas and money orders.   The court has directed the United States Marshals to serve the

subpoenas on the un-incarcerated witness.

Plaintiff remains free to call any un-incarcerated witness listed above who voluntarily

appears at trial.   Plaintiff may also cross-examine any witness that Defendant calls to testify.

## B.  Defendants' Witnesses

1.      Correctional Sergeant C. Castro.

2.      Correctional Officer M. Lopez.

3.      Correctional Officer C. L. Jackson.

4.      Correctional Officer A. Parra.

## VIII.  Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at

trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS

ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P.

16(e); Local Rule 16-281(b)(11).

## A.  Plaintiff's Exhibits

1.      Portions of Title 15 attached to Plaintiff's Pretrial Statement.

2.      Plaintiff's opposition and Defendants reply to the supplemental production of
        documents, and related documents.

3.      Inmate Stephens' Administrative Appeal, Log Number 04-1371.

4.      Memorandum by A.K. Scribner, CSP-Corcoran Warden, entitled Door Kicking
        Policy Rescission, Dated August 16, 2004.

5.      Plaintiff's Medical Records attached to Plaintiff's Pretrial Statement.

6.      RN Protocol's attached to Plaintiff's Pretrial Statement, including RN Protocol for Asthma/Bronchospasm dated December 2003; RN Protocol for Respiratory Distress dated December 2003; RN Protocol for Respiratory Arrest dated January 2002; RN Protocol for Rhinitis/Pharyngitis dated December 2003.

**B.  Defendants' Exhibits**

1.      Incident Report Log #COR-03C-04-04-0219, dated April 9, 2004.

**IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)**

None Listed.

**X.  Further Discovery or Motions**

None.

If any party intends to file motions in limine, the procedure and time requirements are set forth below.

Even though discovery is closed, all parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(2).

**XI.  Stipulations**

_____Defendants have offered to stipulate to the undisputed facts listed in Defendants' pretrial statement.

**XII.  Amendments/Dismissals**

     None.

**XIII.  Settlement Negotiations**

     None.

     If the partes both agree a settlement conference would be of assistance, the parties are directed to contact the chambers of Magistrate Judge Dennis L. Beck at (559) 499-5670 to schedule a settlement conference.

**XIV.  Agreed Statement**

     No party has stated that a presentation of some or all of the evidence by agreed statement is feasible or advisable.

**XV.  Separate Trial Of Issues**

     No party requests a separate trial of issues.

     As is this court's custom, the court will bifurcate the issue of punitive damages.

**XVI.  Impartial Experts - Limitation Of Experts**

     No party believes a court appointed expert or a limitation of experts is necessary.

**XVII.  Attorneys' Fees**

     Plaintiff may not seek attorney's fees.  See  Kay v. Ehrler, 499 U.S. 432, 435-37 (1991).

**XVIII.  Further Trial Preparation**

     **A.  Motions In Limine Hearing and Briefing Schedule**

     Any party may file a motion in limine.  The purpose of a motion in limine is to establish

in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  <u>Luce v. United States</u>, 469 U.S. 38, 41 n. 4 (1984); <u>Jonasson v. Lutheran Child and Family Services</u>, 115 F. 3d 436, 440 (7th Cir. 1997).  The court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  <u>Id.</u>; <u>Hawthorne Partners v. AT & T Technologies, Inc.</u>, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party or parties, and filed with the court, by 4:00 p.m. on October 9, 2007.   Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party or parties, and filed with the court, by 4:00 p.m. on October 23, 2007.

Any reply must be filed by 4:00 p.m. on October 30, 2007.

If any party files a motion in limine, the court will hear and decide such motions on the morning of trial, November 6, 2007, at 8:30 a.m.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.


**B.  Trial Briefs**

The parties may file an optional trial brief by October 23, 2007.  <u>See</u> Local Rule 16-285. The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.

Any response to a trial brief may be filed by October 30, 2007.

13

**C.  Duty to Pre-Mark Exhibits**

If the parties have not already done so, the parties are ordered to exchange exhibits and pre-mark their exhibits by October 5, 2007.   All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by April 12, 2007, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each side's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel for Defendant and Plaintiff are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above. Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiff's Exhibit 1 or Defendant's Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or

14

Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders by 4:00 p.m. on November 1, 2007.

The court has no objection to counsel using copies.  However, the copies must be legible. If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

**D.  Morning Conferences During Trial**

During the trial, it is the obligation of Defendant's counsel and Plaintiff to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well.  The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by the parties will eliminate the need for that result.

**E.  Order Of Witnesses**

In order to make the trial operate efficiently and smoothly, Defendant's counsel and Plaintiff have the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

**F.  Proposed Jury Instructions**

The parties shall file and serve proposed jury instructions by 4:00 p.m. on November 1, 2007.  Counsel for Defendant must also provide Defendant's proposed jury instruction on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 10, and e-mail them to: *awiorders@caed.uscourts.gov*.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

**G.  Proposed Verdict Form**

The parties shall file and serve a proposed verdict form by 4:00 p.m. on November 1, 2007.

16

**H.  Voir Dire**

The parties may file and serve proposed voir dire questions, if any, by 4:00 p.m. on November 1, 2007.

Further, in order to aid the court in the proper voir dire examination of the prospective jurors, the parties should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

**I.  Use Of Videotape and Computers**

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on November 1, 2007.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

**J.  Agreed Summary Of The Case**

The parties file a joint agreed summary of the case, briefly outlining the positions of the parties by 4:00 p.m. on November 1, 2007.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents

of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

**XIX.  Objections to Pretrial Order**

Any party may, within ten calendar days after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

**XX.  Rules of Conduct During Trial**

       **A.  General Rules**

       1.    All participants in the trial shall conduct themselves in a civil manner. There shall be no hostile interchanges between any of the participants.

       2.    All oral presentations shall be made from the podium, unless otherwise permitted by the court.

       3.    Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

       4.    Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

       **B.  Jury Selection**

       1.    The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

**C.  Opening Statements**

1.    Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D.  Case in Chief**

1.    Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.    At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.  Witnesses**

1.    Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.    Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.  Exhibits**

1.    All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.    An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.    The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

**G. Objections**

1.       No speaking objections or arguments are permitted in the presence of the jury. Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated. The court will permit counsel to argue the matter at the next recess.

2.       The court will not assume that any objection made also implies with it a motion to strike an answer that has been given. Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H. Closing Argument**

1.       Counsel may use visual aids in presenting the closing argument. However, any proposed visual aids shall be shown to opposing counsel before closing argument.

**FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER**

IT IS SO ORDERED.

**Dated:    September 25, 2007**                 _____/s/ Anthony W. Ishii_____
                                                 UNITED STATES DISTRICT JUDGE